Per Cur.

‘1 The distinction between interest which goes ‘ ‘ to the. competence of a witness, and influence, which goes ‘ ‘ to his credit, is clearly settled since the case of Abrahams “z/. Bunn; and the rule is now established, that where the “matter is doubtful, the objection shall go to his credit.” 4 Burr. 2255. Francis is not interested in the event of the present cause. He can derive no certain decided gain or loss from the determination of this action. The verdict cannot be given in evidence in any suit brought by him against the defendants as executors of his father. He does not come forward to invalidate his own act; he is produced to prove that the arbitrators have pursued the authority delegated to them, and have made an award, which should be sanctioned. We think with Rord Hardwicke, that “objections similar to the present, should be restrained to * “ the credit rather ‘ ‘ than the competency of the witness, unless it is like “to introduce great perjury, because it tends to let in light “to the cause;” (Hardw. Cas. 360,) and with Justice Buller, that “the most solid ground is to confine the objection to “a witness to an interest in the event of the cause.” (x Term Rep. 302.) We therefore apprehend the witness should be sworn and his evidence lift to the jury, who ought calmly and dispassionately to weigh the prejudice, influence, or bias upon the mind of the witness, and judge of his credibility.
Francis was sworn accordingly. Vide 3 Term Rep. 27, 34, 36, 309, 310.
The award of the arbitrators, relied on by the defendants, contained the special statement of their administration account. It appeared that the testator had died in March 1780, possessed of 610I. 17s. continental money, and that the bulk of his personal estate had been appraised in the inventory at the specie value, which had been carried out in the account into a continental column at the rate of 40 for 1. The different items of payments in continental currency credited to the executors amounted to 2039I. 7s. 6d. exceeding the amount of the continental money he died possessed of, by the sum of 1429I. os. 6d. It was evident therefore on inspection of the account, that if all those payments had been made in March or April 1780, when the scale of depreciation fixed the value of continental money at 61 for 1, the executors would have derived a profit of at least 6s. 7d. in each pound specie, thus carried out at 40 for 1, to pay the balance of 1429I. os. 6d.; consequently there was a clear mistake in calculation apparent on the face of the account, which every principle of justice and law called on the court to rectify. The court having expressed their sentiments fully on this head, that the account required re-examination, and that the executors were only entitled to a credit of the real value of the said 1429I. *86 os. 6d. according to the true depreciation of the different payments by them made, it was at length agreed to withdraw a juror, and submit the account of the executors by rule of court, to three judicious men, to be re-examined and settled by them.
Messrs. Sergeant pro quer.
Messrs. Wilcocks and T. Ross pro def.