# CASES

# Supreme Court of Judicature,

OF THE

# STATE OF NEW JERSEY,

MAY TERM, 1829.

———————◆———————

WILLIAM HENARIE, Administrator of DAVID DRAKE, dec'd,
*against* GEORGE MAXWELL.

### IN ERROR.

An interest in the question in controversy, does not disqualify a person from being a witness; the interest which excludes a witness is an interest in the event of the suit.

If A. bring an action against B. for the amount of a due bill, given by B. to A. and B. pleads payment and gives notice of his intention to prove on the trial, that C. in his life-time agreed to pay and did pay A. the amount of the due bill, and offers D. the executor and residuary legatee of C. to prove the fact of payment, C. is a competent witness for that purpose.

———————

This case came before the court on a writ of error, directed to the Court of Common Pleas of the county of Hunterdon ; on the trial of the cause before the Court of Common Pleas,

VOL. V.                           23

bills of exception were taken to the opinion of that court, and the questions arising thereon were argued at the last term by

*Saxton* and *Vroom* for the plaintiff in error.

*Wurts* and *Wall* for the defendant.

The facts in the case are sufficiently disclosed in the opinion of the court, which was delivered by

FORD, J. George Maxwell brought an action in the Common Pleas of Hunterdon, against William Henarie, as administrator of David Drake, deceased, and declared on a due bill of the intestate for one hundred and twenty-five dollars. The administrator pleaded the general issue and payment, and gave notice of his intention to prove that Imla Drake, Sen., undertook to pay the said bill, and that he paid and satisfied it in his life-time, to the plaintiff. The parties went to trial on this point; but the plaintiff had to prove the execution of the bill, to which Imla Drake, *Jun.*, was *subscribing* witness; and he, subsequently to his attestation, had become *executor and residuary legatee* of the aforesaid Imla Drake, *Sen.*, deceased, the person alleged in the notice to have paid the bill; for which reason the said executor was holden by the court to be an interested witness; and they permitted his handwriting to the attestation to be proved by another person, and rejected him when offered as a witness on the part of the defendant. The defendant prayed a bill of exceptions to each of these opinions. If a witness, after attesting an instrument, becomes incompetent by subsequent events, there is no doubt his handwriting may be proved as if he were dead, or not to be found. The case turns, therefore, upon the question of his incompetency, and this depends again on the nature of his interest. Now, the undertaking of his testator

to pay the due bill in question, certainly bound the *testator's estate* in the hands of his executor, and gave the legatee a plain interest in the extinguishment of the debt, which otherwise might fall upon and diminish the estate in which the legatee was interested; therefore, his interest *in the question* is so manifest that words can hardly make it plainer.

But an *interest in the question* does not disqualify one to be a witness at the present day; it is a *bias*, however, that may turn his mind out of a straight course, and as such may be shewn to a jury, and become a good reason for them to distrust his testimony when it stands alone, and much more so, if it stands opposed to the evidence of a disinterested witness, or is contrary to circumstances in the case of an opposite tendency; but it is not considered as rendering him incompetent by any of the modern decisions. Those which have been made in Westminster Hall, or even in the United States, to this effect, are too numerous to be particularly stated, and only a few of the leading ones will be mentioned. *Phillips*, in a review of the English cases, 1 *Phil. Ev.* 36, says, " it is scarcely possible to reconcile the earlier cases with the modern ones touching the interest that renders a witness incompetent; at one time, an *interest in the question* disqualified him, &c.; but the rule now is, that the witness must be interested in *the event of the suit.*" In the case of *Bent* v. *Baker*, 3 *Term. Rep.* 36, *Buller*, J. explains this rule with great clearness; he says it is this, " Is the witness to gain or lose by the *event of the suit ?* Can the *verdict* be evidence *for* or *against* him in any other suit ?" The courts of the United States being equally embarrassed by the ancient cases, have almost universally, I believe, adopted the modern rule. It has been acted upon in New Jersey ever since the case of *Bent* v. *Baker*. In New York, it was fully established in *Van Nuys* v. *Terhune*, 3 *Johns.* 83; and in Connecticut, in the case of *Phelps* v. *Winchel*, 1 *Day* 270. See also 5 *Johns.* 256, 144; 4 *Taunt.* 17; 1 *Yeates* 84.

Therefore, the legal test of competency is, whether the verdict will be evidence for or against the witness, in any action in which he himself may afterward be a party; if it will not, he is competent to be sworn, and the weight and credibility of the evidence he gives, must be submitted to the discernment and good sense of the jury, upon a consideration of the bias arising from his interest in the question. Now, if the administrator should be condemned to pay this money, by reason of the verdict in this cause being against him, he may immediately bring an action against the witness, as executor, for his testator's neglect to pay the due bill according to his undertaking; and if the executor should plead that the testator in his life-time, did pay the money to Mr. Maxwell, could this verdict between *other parties* be evidence against *him?* Could it debar him of proving the *truth* of his plea, or conclude his rights? Nay, could it be received even to prejudice them? *Baron Gilbert* in his law of evidence, page 29, says thus, " If a verdict be had on the *same point* and between the *same parties*, it may be given in evidence, though the trial was not had for the same lands; but the verdict ought to be *between the same parties.*" And for this he gives the most forcible reasons; otherwise, he says, a man would be bound by a decision where he had not the liberty to cross examine, nor to controvert, nor to appeal, if he supposed the verdict wrong. If the executor had been a *party* to the other suit, with the privilege of adducing papers, and of calling and examining witnesses, the verdict might have been the other way; he might have called other witnesses; he might have produced other papers; perhaps Mr. Maxwell's receipt for the money, or David Drake's receipt for the payment of it *to him.* And is he to be concluded, or even prejudiced, by the event of a suit *between other parties*, in which he could have subpœna for neither a witness, a book or a paper, nor give notice for the production of one, in which he had no right to be served with a notice of trial, and might have been sick or absent on a

journey when the cause was tried? In point of law it is *res enter alios acta.* He might as well be bound by his neighbor's bond. How came another man to be the guardian of his rights, so as to take away from him the privilege of defending himself? Such a guardian, either from ignorance, indolence, carelessness, or collusion with the opposite party, might have made only half a defence. The record would condemn the executor before he was heard. If what the court incidentally said to the contrary of this doctrine, in *Emmerton* v. *Andrews*, 4 *Mass.* 653, were entitled to more weight, as an *obiter dictum,* not being the point before the court, than it is on that account, it would be sufficiently overbalanced by the weighty passage cited above from *Baron Gilbert,* and the sound reasons assigned by him, without adducing the very respectable opinion of *Spencer, J.* in *Case* v. *Reeve,* 14 *Johns.* 81, where he says, "a suit between two persons, does not *bind* or *affect* a *third person,* who could not be admitted to make a defence, to examine witnesses, or to appeal from the judgment." The principle being, therefore, fully established in the ancient and modern books, by the opinion of the ablest writers on judicial proceedings, and in decisions of the most enlightened courts of judicature, that any verdict in this cause would be no evidence for or against the witness in any action in which he might hereafter be a party, it follows, that his interest in the question should have been left to the jury as only affecting his credit, and not have been held as totally destroying his competency; which latter opinion, in this view of the matter, was erroneous, and, consequently, must be fatal to the judgment.

The Chief Justice did not sit in this cause.